

05/24/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WRN 1301, INC., f/k/a | § | Case No. 06-41381 |
| WHITE ROCK NETWORKS, INC., | § | Chapter 11 |
| | § | |
| Debtor. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING THE DEBTOR'S AMENDED LIQUIDATING CHAPTER 11 PLAN
FOR WRN 1301, INC., F/K/A WHITE ROCK NETWORKS, INC. DATED MARCH 8, 2007**

At Plano, Texas in said District, on the 14th day of May, 2007, came on for consideration the request of WRN 1301, Inc., formerly known as White Rock Networks, Inc., the debtor herein (the "Debtor"), for this Court's confirmation of the Debtor's Amended Liquidating Chapter 11 Plan for WRN 1301, Inc., formerly known as White Rock Networks, Inc., Dated March 8, 2007 (including all supplements and amendments thereto, the "Plan") (Docket No. 198), proposed by the Debtor for its Chapter 11 bankruptcy estate ("Estate").

This Court having entered on March 13, 2007, after due notice and a hearing, its Order (the "Approval Order") approving the Debtor's Disclosure Statement in Support of the Plan, Dated January 30, 2007, as supplemented (including all supplements and amendments thereto, the "Disclosure Statement"), which Approval Order also: (i) set May 4, 2007 as the applicable deadline for the filing of objections to confirmation of the Plan; (ii) set May 9, 2007 as the deadline by which the holders of claims and interests in and of the Debtor may accept or reject the Plan; (iii) approved the form of Ballot ("Ballot(s)") for the submission of such acceptances or rejections; and (iv) scheduled May 14, 2007, 2:00 p.m., as the hearing date and time for the Court's consideration of confirmation of the Plan ("Confirmation Hearing"), now, after conducting the Confirmation Hearing, due deliberation and consideration of the record before it, the evidence introduced and proffered, arguments of counsel, and after entertaining and

considering any and all objections to the requested confirmation of the Plan, with notice having been provided to all parties entitled to same under the particular circumstances, this Court hereby makes the following findings of fact and conclusions of law pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

All of the following findings of fact shall constitute findings of fact even if stated as conclusions of law, and all of the following conclusions of law shall constitute conclusions of law even if stated as findings of fact:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A. Jurisdiction. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334(e) over the Debtor's Chapter 11 bankruptcy case ("Bankruptcy Case")[1] and over entry of this Order. Matters regarding confirmation of the Plan and approval of the Disclosure Statement are core proceedings within the meaning of 28 U.S.C. § 157(b). Venue of these proceedings and the Bankruptcy Case in this District is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409. This Court has the exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code (as hereinafter defined) and should be confirmed.

B. Background.

1. Commencement and Administration. This Bankruptcy Case was commenced by the Debtor's voluntary petition filed with the Court on August 31, 2006 (the "Petition Date"), under Chapter 11 of title 11 of the United States Code, section 101, *et seq.* (the "Bankruptcy Code"). No Trustee or official committee of unsecured creditors has been appointed in the Bankruptcy Case. Since the Petition Date, the Debtor has continued to operate and manage its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

---

[1] Capitalized terms not otherwise defined in this Order have the meanings ascribed to them in the Plan.

2. <u>Judicial Notice</u>.  In making its findings of fact and conclusions of law as set forth in this Order, this Court takes judicial notice of the docket of this Bankruptcy Case, including, without limitation, all pleadings, and other documents filed, orders entered and the evidence introduced at this confirmation hearing.

3. <u>Summary</u>.  The Plan provides for the continued existence of the Debtor as a liquidating debtor for purposes of distributing the proceeds held by the estate.  The proceeds were obtained primarily through the sales of substantially all of the Debtor's assets.  Specifically, the Plan proposes to pay the Allowed Claims of creditors of the estate in Classes 1-4 in full, with interest where appropriate, and also provides for some distribution to Holders of Series AA Preferred Stock.

4. The Plan provides for the formation of the WRN Liquidating Trust to pursue certain litigation against third parties (defined in the Plan as the "<u>WRN Liquidating Trust</u>"), referred to as the Fairchild Litigation.  This litigation is conveyed to the WRN Liquidating Trust under the Plan and the WRN Liquidating Trust will continue in existence, subject to the terms of the WRN Liquidating Trust Agreement, until the litigation has been fully liquidated and the proceeds thereof paid to its beneficiaries comprised of any creditors holding Allowed Claims against the Estate to the extent these remain unpaid, if any, and/or to Equity Interest holders in Class 5 to the extent that any such proceeds remain after the payment in full of Allowed Claims.  The transfer of the WRN Liquidating Trust Assets to the WRN Liquidating Trust is scheduled to occur on the Effective Date of the Plan.  To the extent that there remain additional assets of the Estate after payment in full of all Allowed Claims, and the winding up of the Liquidating Debtor's affairs, such additional assets are to be conveyed to the WRN Liquidating Trust, provided however that, upon the payment in full of all Allowed Claims, the Liquidating Debtor may, at its election, make an initial distribution to Holders of Series AA Preferred

Stock while reserving funds as needed for the remaining administration of the Liquidating Debtor's affairs.

5. No creditor or party-in-interest has objected to the Plan. One creditor, Granite 190 Center, Ltd. ("Granite"), had originally objected to the Disclosure Statement, asserting certain arguments for objecting to the Plan as well, but Granite's objection to the Disclosure Statement has been consensually resolved, Granite does not oppose the confirmation of the Plan and has voted to accept the Plan.

C. Notice. Timely, sufficient, and adequate notice of the Plan and the Confirmation Hearing, together with the deadlines for voting on and filing objections to confirmation of the Plan, has been given to all known creditors of the Estate, including holders of alleged administrative priority claims, as well as all holders of Equity Interests in the Debtor, and other parties-in-interest, at their last known addresses in accordance with the rules and procedures established by the Approval Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court, and all other applicable laws, rules, and regulations. The Debtor has timely served upon all holders of Claims and Equity Interests in classes entitled to vote under the Plan, copies of the Plan and Disclosure Statement, a copy of the Approving Order, and a Ballot (such items collectively comprising the "Solicitation Package"), by mailing to each such holder a copy of the Solicitation Package through the United States mail, first class, postage pre-paid and properly addressed. Under the particular circumstances, no further notice of these matters is required for confirmation of the Plan.

D. Solicitation and Ballot Tabulation. The solicitation by the Debtor of votes accepting or rejecting the Plan was conducted in good faith and in compliance with the Approval Order, sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and other applicable laws, rules, and regulations. As evidenced by the testimony adduced at the Confirmation Hearing, the procedures by which ballots for acceptance of the Plan were

distributed to holders of Claims or interests entitled to vote thereon, and by which such ballots were tabulated, were fair and properly conducted in accordance with the Approval Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court, and all other applicable laws, rules, and regulations.

E. <u>Objections</u>. There are no objections to the Plan by any creditor or other party-in-interest.

F. <u>Plan Modifications</u>.

1. Subsequent to its original filing on January 30, 2007, the Debtor made certain non-material modifications to the Plan as set forth in its Plan, including modifications to accommodate the yet to be resolved issues related to an objection to Granite's proof of claim (as amended) and to identify the persons to serve as the Initial Trust Advisors for the WRN Liquidating Trust created pursuant to the Plan.

2. The Debtor was recently contacted by General Electric Capital Corporation ("<u>GECC</u>") regarding an executory Equipment Lease dated as of March 19, 2004 (the "<u>GE Lease</u>"), pertaining to certain equipment ("<u>Equipment</u>"). Upon further investigation, the Debtor has learned that the Equipment was sold for value to Turin Networks, Inc. ("<u>Turin</u>"). Accordingly, the Debtor has agreed to pay off the amount of $4,150.72 to purchase the Equipment, with GECC's consent. Notwithstanding any other provision of the Plan, the Estate's assumption/settlement of the GE Lease is an exercise of sound business judgment and should be approved for all purposes. Such payment should be made in accordance with the terms of the Plan for the payment of administrative expense claims.

3. The Debtor was also recently contacted by the Internal Revenue Service regarding modifying the Plan to include the following default provision which the Debtor has agreed to:

If the Debtor or the reorganized Debtor fails to make all payments on federal taxes provided for in this Plan or if any other event of default directly impacting the payment of federal taxes as provided in the Plan occurs, the United States shall be entitled to give the Debtor notice of the default and if the default has not been cured within thirty (30) days from the mailing of the written notice, the United States shall have the following rights:

(a) The United States shall have the right to declare due and payable any interest or penalties which would have accrued on prepetition tax liabilities of the Debtor but for the filing of the bankruptcy petition, and if the Debtor fails to pay the interest and penalties, then they may be assessed by the United States;

(b) The prepetition tax claims shall be treated as taxes owed by a nondebtor as if no bankruptcy petition had been filed and as if no plan had been confirmed;

(c) The United States shall have the right to proceed to collect from the Debtor or the reorganized Debtor any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed. Such procedures shall include, but not be limited to:

(1) The filing of notices of Federal tax liens; and
(2) Collection by levy as provided by I. R. C. §§ 6331 through 6344.

Nothing contained herein shall limit, release or waive any rights of the Debtor or reorganized Debtor to object to any claim or claims filed by the United States, the Department of the Treasury or the Internal Revenue Service.

4.   None of the above referenced modifications to the Plan adversely affects the treatment of any Claim under the Plan in any material respect. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code, any resolicitation of votes under section 1126 of the Bankruptcy Code, nor any opportunity for any party to change previously submitted votes. The Plan as modified constitutes the Plan submitted to the Court for confirmation.

G.   <u>Section 1129(a)(1)</u>.  As required by section 1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code. The Plan also satisfies the provisions of sections 1122 and 1123 of the Bankruptcy Code.

1.  The classification of Claims and Equity Interests under the Plan is reasonable, not discriminatory, and consistent with section 1122(a) of the Bankruptcy Code. Valid reasons exist for the classifications set forth in the Plan, which were not done for any improper purpose, and which do not unfairly discriminate against any holders of Claims or Equity Interests.

2.  As required by and in compliance with sections 1123(a)(1), (a)(2), and (a)(3) of the Bankruptcy Code, the Plan (a) identifies the Classes of Claims and Equity Interests; (b) specifies the Classes of Claims and Equity Interests that are not impaired under the Plan as well as those that are impaired under the Plan; and (c) specifies the treatment of each Class of Claims and Equity Interests under the Plan.

3.  As required by and in compliance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for all Claims or Equity Interests within each particular Class, other than to the extent a holder of such Claim or Equity Interest consents to its treatment thereunder.

4.  As required by and in compliance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its execution and implementation including, but not limited to: (a) a structure for the completion of the liquidation of the Estate and the distribution of proceeds thereof to holders on account of Administrative Expense Claims, Priority Claims, other Allowed Claims in the order of their priority, and Allowed Equity Interests; (b) the governance and eventual dissolution of the Liquidating Debtor; and (c) the creation and administration of the WRN Liquidating Trust, including through the specification of governing documents, personnel and funding for the WRN Liquidating Trust. The Plan specifically provides for the WRN Liquidating Trust to be created and to be funded initially with a minimum of $150,000 upon its creation, as well as by proceeds remaining in the Estate after the payment in full of all Allowed Claims. Because the Estate appears to possess sufficient proceeds to

pay the Allowed Claims of Creditors in full, as well as to distribute some proceeds remaining thereafter to the holders of Equity Interests in the Debtor, through the WRN Liquidating Trust, the Plan clearly provides for adequate means for its implementation.

5. No equity securities are to be created under the Plan and accordingly, the provisions of section 1123(a)(6) are inapplicable.

6. As required by and in compliance with section 1123(a)(7) of the Plan, the Plan contains provisions consistent with the interests of Creditors and Equity Interest holders in and of the Estate for the selection of officers, directors and the WRN Liquidating Trustee, to manage the Liquidating Debtor's and WRN Liquidating Trust's affairs, including by allowing beneficiaries of the WRN Liquidating Trust to seek relief before this Court in the event that cause appears to exist to either remove the WRN Liquidating Trustee, or to designate a replacement trustee in the event of a vacancy. *See also* the Court's discussion of the Liquidating Debtor's management in connection with section 1129(a)(5) herein below.

H. <u>Section 1129(a)(2)</u>. As required by section 1129(a)(2) of the Bankruptcy Code, the Debtor, as the proponent of the Plan, has complied with all of the applicable provisions of the Bankruptcy Code, including all applicable provisions regarding disclosure and solicitation with respect to the Plan.

I. <u>Section 1129(a)(3)</u>. As required by section 1129(a)(3) of the Bankruptcy Code, the Debtor has proposed the Plan in good faith and not by any means forbidden by law. The Debtor has proposed the Plan with the legitimate purpose of adjusting the Debtor's debts and maximizing the returns to parties-in-interest in the Bankruptcy Case. The good faith of the Debtor was established at the Confirmation Hearing through the evidence adduced and proffered and no party-in-interest has raised any challenge or issue disputing such good faith.

J. <u>Section 1129(a)(4)</u>. As required by section 1129(a)(4) of the Bankruptcy Code, all payments made or to be made by the Debtor for services or for costs and expenses in

connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, have been approved by this Court or are subject under the Plan to the approval by this Court.

K. Section 1129(a)(5). As required by section 1129(a)(5)(A)(i) of the Bankruptcy Code, the Debtor has disclosed that William L. Martin III will continue to serve as the President of the Liquidating Debtor, and has further disclosed the terms of service applicable for such service. Furthermore, the Debtor has also disclosed the identities of the persons to serve as the initial Trust Advisors for the WRN Liquidating Trust created pursuant to the Plan, and has identified John F. Ramsbacher as the initial Trustee of the WRN Liquidating Trust. As required by section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the continued service of Mr. Martin as set forth above is consistent with the interests of Creditors and Equity Interest Holders. Mr. Martin qualifies as a disinterested person under the Bankruptcy Code, has substantial experience with the Debtor and the Bankruptcy Case and is well qualified to serve in such capacities to facilitate the remaining, efficient liquidation and dissolution of the Estate and the Debtor. Similarly, Mr. Ramsbacher appears to be duly qualified to serve as the Trustee of the WRN Liquidating Trust, and does not appear to have any prior relationship with the estate or any interest adverse thereto. Accordingly, he also appears to be a disinterested person. No party has raised any issue disputing his qualifications or appropriateness to serve as the Trustee of the WRN Liquidating Trustee, and such capacity, shall have a fiduciary duty to all beneficiaries of the WRN Liquidating Trust.

L. Section 1129(a)(6). No governmental regulatory commission has jurisdiction over the approval of any rates of the Debtor, and therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

M. Section 1129(a)(7). As required by section 1129(a)(7) of the Bankruptcy Code, with respect to each impaired class of Claims and Equity Interests, each such Class has accepted the Plan. Even were that not the case, each holder of a Claim or Equity Interest in

any impaired class will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount such holder might receive or retain if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.  Among other things:

        1.    As evidenced by the tabulation provided by the Debtor at the Confirmation hearing, all Classes entitled to vote under the Plan (Classes 3-5) have voted to accept the Plan, both in the number of holders and the amount of Claims or Equity Interests as the case may be.

        2.    The liquidation and wind-down of the Estate contemplated by the Plan will be more efficient and cost-effective than that which would occur under chapter 7 because, among other things, the Plan provides for the expeditious payment of available proceeds of the Estate to Allowed Claims and Equity Interests, without the need for the delay or expense occasioned by the appointment of a Chapter 7 Trustee.

N.    <u>Section 1129(a)(8) and Section 1129(b)</u>.  As established at the Confirmation Hearing, all impaired Classes have voted to accept the Plan.  Accordingly, the requirements of section 1129(a)(8) of the Bankruptcy Code have been met with respect to each Class.

O.    <u>Section 1129(a)(9)</u>.  In satisfaction of section 1129(a)(9) of the Bankruptcy Code, the Plan provides for the payment in full of all Allowed Administrative Expense Claims and Allowed Priority Claims on or as soon as practicable after the later of the Effective Date of the Plan or within ten (10) days of the date on which any such Administrative Expense Claim or Allowed Priority Claim becomes an Allowed Claim.

P.    <u>Section 1129(a)(10)</u>.  As required by Section 1129(a)(10) of the Bankruptcy Code, at least one impaired Class has accepted the Plan as determined without including any acceptance of the Plan by any insider.

Q.    <u>Section 1129(a)(11)</u>.  The Plan is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The Plan is a liquidating plan that adequately

provides the means for liquidating the Estate and for distributing all proceeds from such liquidation to the holders of Allowed Claims and Allowed Equity Interests except to the extent that the holder thereof agrees to different treatment.

  R. <u>Section 1129(a)(12)</u>.  The requirements of section 1129(a)(12) of the Bankruptcy Code are satisfied because the Debtor has timely paid all outstanding fees of the United States Trustee and will continue to do so under the terms of the Plan to the extent required.

  S. <u>Section 1129(a)(13)</u>.  The requirements of section 1129(a)(13) of the Bankruptcy Code are inapplicable because the Debtor is liquidating under chapter 11 and no longer operates any ongoing business.

  T. <u>Other Requirements</u>.  The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code because no other plan has been confirmed in the Bankruptcy Case. The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, but to fully liquidate the Debtor's business.

  NOW, THEREFORE, IT HEREBY IS ORDERED, ADJUDGED, AND DECREED THAT:

  1. The Plan is hereby confirmed pursuant to section 1129 of the Bankruptcy Code. To the extent that there is any inconsistency between the Plan and this Order, the terms of the Plan shall control, with the exception however of the specific treatment of claims of GECC and the Internal Revenue Service as hereby addressed and as set forth in this Order.  To the extent that there is any inconsistency between the Plan and the WRN Liquidating Trust Agreement, the terms of the Plan shall control.

  2. As set forth herein above, there are no objections to this Court's confirmation of the Plan.

  3. All requests for payment of an Administrative Expense Claim that have not been paid, released, or otherwise settled, excluding all requests for payment of Professional Claims, must be filed with this Court and served upon the Liquidating Debtor, its counsel, the United

States Trustee, and all parties who have requested notice in the Bankruptcy Case by forty-five (45) days after the Effective Date. Any request for payment of an Administrative Expense Claim that is not timely filed as set forth above is hereby automatically and forever barred and disallowed without any need for further action by any person or entity.

4. Pursuant to the terms of the Plan, all executory contracts and unexpired leases of the Estate not previously assumed or rejected, if any, are hereby deemed rejected pursuant to section 365 of the Bankruptcy Code, provided however that, notwithstanding any other provision of the Plan or this Order, the Estate's assumption/settlement of the GE Lease is hereby approved for all purposes. The Estate shall pay to GECC the amount of $4,150.72, to purchase the Equipment. Such payment shall be paid in accordance with the terms of the Plan for the payment of Allowed Administrative Expense Claims.

5. Any Claim arising from the rejection of an Executory Contract under the terms of Section 10.1 of the Plan must be evidenced by a proof of claim filed with this Court and served on the Liquidating Debtor and the Liquidating Debtor's counsel by no later than forty-five (45) days following the Effective Date of the Plan. Without the need for any further action by any person or entity, all proofs of claim for such damages not timely filed and properly served as prescribed herein shall be forever barred and the holder of such a Claim shall not be entitled to participate in any distribution under the Plan.

6. All claims, rights, defenses, objections to claims, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, and causes of action arising under chapter 5 of the Bankruptcy Code (including without limitation the Avoidance Actions) with respect to the Debtor, hereby are preserved for the benefit of the holders of this Estate per the terms of the Plan and hereby are deemed to be retained by the Liquidating Debtor. Prosecution and settlement of such claims, rights, defenses, and causes of

action shall be the sole responsibility of the Liquidating Debtor, and the Liquidating Debtor shall pursue those claims, rights, defenses, and causes of action, as appropriate, in accordance with what is in the best interests, and for the benefit of holders of Allowed Claims.

7. All of the Debtor's and the Estate's interests in the Fairchild Litigation Claims and the WRN Liquidating Trust Assets (both as such terms are defined under the Plan), as well as any and all claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code, and which are related to the subject matter thereof, hereby are retained by the Liquidating Debtor for the benefit of this Estate.

8. The Debtor is authorized to take any and all steps necessary to effectuate the WRN Liquidating Trust. Upon the Effective Date, the WRN Liquidating Trust Assets shall vest in the WRN Liquidating Trust.

9. In the event that the Liquidating Debtor's distribution of the proceeds of the Estate to the Allowed Claims of Creditors pursuant to the Plan results in the full satisfaction thereof, the Liquidating Debtor may, at its election, make an initial distribution to Holders of Series AA Preferred Stock from funds available while reserving sufficient funds for the remaining administration of the Liquidating Debtor's affairs. The Liquidating Debtor shall, after fully administering the Estate, implementing the Plan, and winding up the affairs of the Liquidating Debtor in accordance with the terms of the Plan, thereafter transfer to the WRN Liquidating Trust all remaining proceeds of the Estate for the benefit of its beneficiaries.

10. The Liquidating Debtor is hereby authorized upon the occurrence of the Effective Date of the Plan to make distributions under and in accordance with the terms of the Plan and this Order, and to effectuate all transfers and conveyances required or contemplated therein, without the need for any further Order or authorization of this Court.

11. The Debtor, Liquidating Debtor, and the WRN Liquidating Trustee, and each of their respective agents and representatives, are hereby authorized and empowered to issue, execute, deliver, file, and record any documents or court papers or pleadings, to make any and all modifications consistent with the Plan and any and all documents contemplated thereby and to take any and all actions that are reasonably necessary or desirable to implement, effectuate, and consummate the transactions contemplated by the Plan and the WRN Liquidating Trust Agreement, whether or not specifically referred to therein, and without further application to or Order of this Court, in each case with like effect. This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any State or any other Governmental Unit with respect to the implementation or consummation of the Plan or WRN Liquidating Trust Agreement and any other acts that may be necessary or appropriate therefor.

12. On or before ten (10) Business Days after occurrence of the Effective Date of the Plan, the Liquidating Debtor shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of (a) entry of this Order; (b) the occurrence of the Effective Date; (c) the rejection of Executory Contracts of the Debtor pursuant to this Plan, as well as the deadline for the filing of Claims arising from such rejection; (d) the deadline established under this Plan for the filing of Administrative Expense Claims; (e) the procedures for requesting notice of the matters subject to Sections 2.1.1, 2.1.2, and 7.1 of the Plan; (f) the procedures for changing an address of record pursuant to section 15.10 of this Plan; and (g) such other matters as the Liquidating Debtor deems to be appropriate. Such notice shall constitute due and sufficient notice of all of such matters in compliance with Bankruptcy Rule 2002(f).

13. All distributions to holders of Allowed Claims and Equity Interests shall be made according to the terms of the Plan. The classification of Claims and Equity Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan. Any distribution which is returned to the Liquidating Debtor or the WRN Liquidating Trust as

undeliverable without any indication of a forwarding address shall be retained by the Liquidating Debtor or the WRN Liquidating Trust for a period of ninety (90) days from the date of its original mailing unless otherwise ordered by the Bankruptcy Court.  Failure of the holder of the Allowed Claim or Equity Interest to come forward and validly make claim to the undelivered distribution by the end of such retention period shall constitute the holder's waiver of any right to receive the distribution and any further distributions under the Plan on account of such Allowed Claim or Equity Interest, and shall constitute the holder's forfeiture to the Liquidating Debtor or the WRN Liquidating Trust of the distribution and any and all future distributions to which the holder would be entitled in relation to such Allowed Claim.  Forfeited distributions shall be redistributed to creditors holding unsatisfied Allowed Claims and Equity Interests consistent with the priorities established under the Plan.  Except as provided herein, the Liquidating Debtor and the WRN Liquidating Trust shall have no obligation to independently investigate and determine the whereabouts of any holder of an Allowed Claim or Equity Interest.

14.    All Fee Applications of Professionals for services rendered prior to the date of the Confirmation Hearing must be filed with the Court within forty-five (45) days of the Effective Date of the Plan.  Any application that is not timely filed as set forth above will be forever barred, and holders of such Professional Claims will not be able to assert such claims in any manner against the Debtor, Liquidating Debtor or the Estate.

15.    Upon entry of this Order, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the date hereof shall terminate, and the Liquidating Debtor may employ and pay its Professionals without any further notice to, action by or approval of this Court or any other party.

16.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Order, the Plan and all documents expressly contemplated by the Plan shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

17. This Order constitutes all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan and any amendments or modifications thereto.

18. All applicable regulatory or governmental agencies shall take all steps necessary to allow and affect the dissolution of the Debtor as provided for in the Plan, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates.

19. There shall be no tax in violation of section 1146(e) of the Bankruptcy Code. Without limiting the generality of the foregoing, there shall be no tax for (a) the creation, modification, consolidation, or recording of any mortgage, assignment, or other security interest pursuant to or in connection with the Plan; and (b) the making, delivery, or recording of any deed or other instrument of transfer pursuant to or in connection with the Plan.

20. Pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, its agents and representatives, and any other persons that solicited acceptances or rejections of the Plan and/or that participated in the formulation of the Plan, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan. The limitation of liability for Exculpated Persons provided for in the Plan is hereby approved and authorized and ordered as if fully set forth in this Order.

21. The injunction provided for in Section 12.3 of the Plan is hereby approved and authorized. Accordingly, pursuant to sections 105 and 1141 of the Bankruptcy Code, and applying the definitions of defined terms set forth in the Plan, this Order hereby forever prohibits, enjoins, and bars all persons and entities that have held, currently hold or may hold a Claim or other debt or liability against the Estate, or who have held, currently hold or may hold an Equity Interest in the Debtor, from taking any of the following actions on account of such Claim or

Equity Interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, the Debtor's Officers and Directors, the Estate, the Liquidating Debtor or the WRN Liquidating Trustee with respect to any property to be distributed under the Plan including funds or reserves held or maintained by any of them pursuant to this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Debtor's Officers and Directors, the Estate, the Liquidating Debtor or the WRN Liquidating Trustee with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any Liens of any kind against the Debtor, the Debtor's Officers and Directors, the Estate, the Liquidating Debtor or the WRN Liquidating Trustee with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtor, the Debtor's Officers and Directors, the Estate, the Liquidating Debtor or the WRN Liquidating Trust with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; provided, however, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan or the WRN Liquidating Trust Agreement through an action commenced in this Court.

22. Notwithstanding the entry of this Order or the occurrence of the Effective Date, this Court will retain jurisdiction of the Bankruptcy Case and all matters arising in or related to the Bankruptcy Case as provided for in the Plan and in this Order and to the fullest extent permitted by law, including sections 1127 and 1142 of the Bankruptcy Code.

23. The failure to reference or discuss any particular provision of the Plan in this Order shall not have any effect on the validity, binding effect, and enforceability of such

provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

24.     Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan or a document expressly contemplated thereby provides otherwise, the Plan and all rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof.

25.     The provisions of the Plan and this Order shall be, and hereby now are and forever afterwards will be, binding on the Debtor, all Equity Interest Holders, all other holders of Claims, any other party-in-interest, and any other party making an appearance in the Bankruptcy Case, as well as their respective heirs, successors, assigns, trustees, representatives, attorneys, beneficiaries, or any other person claiming through or in the right of any such Persons or entities.

26.     This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

SO ORDERED.                                        Signed on 5/24/2007

*Brenda T. Rhoades*          SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

-19-

Submitted By:

MUNSCH HARDT KOPF & HARR, P.C.
Raymond J. Urbanik
Texas Bar No. 20414050
Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 978-4374

ATTORNEYS FOR DEBTOR